# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ANAJAI CALCAÑO PALLANO, et al., )
                                      )
        Plaintiffs,            )
                                        )
        v.                    )         C.A. No. N09C-11-021 JRJ
                                        )
THE AES CORPORTATION, et al.,    )
                                        )
        Defendants.          )

## ORDER

**AND NOW TO WIT**, this 10th day of March, 2016, the Court having heard and duly considered AES's Daubert Motion to Exclude the Testimony of Dr. Finnell;[1] Plaintiffs' Response;[2] and AES's Reply;[3] **IT APPEARS THAT:**

1. Richard H. Finnell, Ph.D. ("Finnell") is a board-certified medical geneticist and teratologist.[4] For the past thirty-five years, Finnell's academic research and teaching activities have focused on the genetic basis of

---

[1] AES's Daubert Motion to Exclude the Testimony of Dr. Richard H. Finnell ("Defs.' Mot. Exclude Finnell") (Trans. ID. 57346086). This Motion is one of nineteen *Daubert* Motions filed by the parties. *See Pallano, et al. v. AES Corp., et al.*, 2015 WL 7776612 (Del. Super. Nov. 24, 2015) (Opinion Denying Defendants' *Daubert* Motion to Exclude the Testimony of William P. Konicki). The Court incorporates by reference the facts, background, and the discussion of Delaware Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), set forth in that opinion. The parties submitted twenty-six Joint *Daubert* Exhibits, which include each expert's report, deposition, and curriculum vitae ("J. Ex.") (Trans. ID. 57342400). *See* J.Ex. 4.A–4.D Expert Report of Richard H. Finnell, PhD, DABMG ("Finnell Expert Report").

[2] Plaintiffs' Response to AES's Daubert Motion to Exclude the Testimony of Dr. Richard H. Finnell ("Pls.' Resp.") (Trans. ID.57496526).

[3] AES's Omnibus Reply in Support of *Daubert* Motions No. 1, 2, 3 and 4 to Exclude Drs. Bearer, Mattison, Khattak and Finnell ("Defs.' Reply") (Trans. ID. 57607790).

[4] Pls.' Resp., Ex. A Declaration of Richard H. Finnell, Ph.D. ¶ 3 ("Finnell Decl.").

environmentally induced birth defects.[5]  For the past ten years, Finnell has been working on federally funded research grants in a coal-mining region in China, where he has been studying the relationship between birth defects and selected constituents of Coal Ash Waste, including arsenic and polycyclic hydrocarbons.[6] Finnell has published over 250 peer-reviewed articles relating to medical genetics, teratology, and birth defects.[7]

2.  Currently, Finnell serves as the Director of Genomic Research at Dell Children's Medical Center, and a tenured Professor in the Departments of Nutritional Sciences and Chemistry at the University of Texas at Austin.[8]  Finnell spends two days a week in specialty pediatrics clinics evaluating patients with congenital malformations.[9]  In this capacity, Finnell examines and evaluates children with birth defects, interprets genetic testing, researches relevant literature, and, based upon his analysis of all the relevant data, provides counseling to the patients' families with respect to the genetic and teratogenic implications for these families.[10]

3.  In reaching his causation opinions in this case, Finnell applied the same

---

[5] *Id.* ¶ 3.
[6] *Id.* ¶¶ 3, 12.
[7] *Id.* ¶ 7.
[8] *Id.* ¶ 5.
[9] *Id.* ¶¶ 5, 16.
[10] *Id.*

methodology that he applies in his clinical and research activities.[11]   Finnell's

Declaration and Joint Declaration explain in detail this methodology,[12] along with

other methodologies factored into his analyses, including the weight-of-the-

evidence analysis,[13] Bradford-Hill,[14] differential diagnosis,[15] epidemiology,[16]

toxicology,[17] genetics,[18] and risk assessment.[19]

4.   Finnell provided a detailed expert report for Amparo Andujar's failed

pregnancy,[20] Maximiliano Altagracia Calcano,[21] Isael Altagracia Andujar,[22] and

Starlys Garcia Deogracia.[23]   Finnell's opinions are based upon his education,

training, experience, and specialized knowledge in genetics, embryology, organ

development, and the role of teratogens in the development of birth defects, and

developmental and reproductive toxicology.[24]   In preparing his opinions, Finnell

reviewed and relied upon medical records and clinician reports, genetic studies,

and peer-reviewed literature relating to the teratogenicity of arsenic and the effects

---

[11] *Id.* ¶ 16.
[12] *Id.* ¶¶ 15–19.
[13] Pls.' Resp., Ex. B Joint Declaration of Sohail Khattak, M.D., FRCP(C), Richard H. Finnell Ph.D., and Donald R. Mattison, M.D. ¶¶ 41–49 ("Joint Declaration") (Trans. ID. 57496491).
[14] *Id.* ¶¶ 52–56.
[15] *Id.* ¶¶ 101–08
[16] *Id.* ¶¶ 69–100.
[17] *Id.* ¶¶ 132–39.
[18] *Id.* ¶¶ 140–67.
[19] *Id.* ¶¶ 109–31.
[20] Finnell Expert Report 4.A.
[21] Finnell Expert Report 4.B.
[22] Finnell Expert Report 4.C.
[23] Finnell Expert Report 4.D.
[24] Pls.' Resp. at 8; Finnell Expert Report 4.D at 6–7.

of *in utero* exposure to arsenic, and peer-reviewed literature relating to the teratogens in Coal Ash Waste.[25]

5. For each child Plaintiff, Finnell discusses the medical reports he reviewed and relied upon, and conducts an in-depth analysis of each child Plaintiff's genetic testing results, relevant medical literature, and how each child Plaintiff's individual gene variants relate (or do not relate) to their individual congenital anomalies.[26] Finnell also analyzes literature relating to gene-environment interactions in the etiology of birth defects, embryology and organ formation, and human epidemiological and animal studies concerning Coal Ash Waste and its toxic constituents (arsenic, PAHs , cadmium, mercury, zinc, antimony, chromium, lead, selenium), and discusses how each of these studies factor into his causation analysis for each Plaintiff.[27] In addition to analyzing numerous epidemiology, toxicology, and medical publications, Finnell reviewed and relied upon exposure data and expert exposure models to evaluate the timing, length, and intensity of each Plaintiff's exposures.[28]

6. Finnell concludes each of his reports by explaining that each child Plaintiff's congenital abnormities are not strictly attributed to any known genetic factors inherited from his or her parents, and opines to a reasonable degree of

---

[25] Finnell Decl. ¶¶ 20–39.
[26] *See e.g.*, Finnell Expert Report 4.B at 6–23.
[27] *Id.* at 23–43.
[28] *Id.* at 27–28; Finnell Decl. ¶¶ 40–49.

4

scientific certainty that each child Plaintiff's congenital anomalies are likely the result of *in utero* exposure to teratogenic compounds present in significant concentrations of Coal Ash Waste, to which the mothers were exposed.[29]

7.    The Court is more than satisfied that Finnell's opinions pass muster under D.R.E. 702 and *Daubert*.  Finnell is clearly qualified to render the expert causation opinions at issue, and Finnell's proffered testimony is based upon sufficient facts and data, is the product of reliable principles and methods, and he has applied the principles and methods reliably to the facts of this case.  Finnell has explained the literature he relies upon (and does not rely upon), the methodology he employed, and has articulated his thought process, evaluation methods, and conclusions.

**WHEREFORE,** because the Court finds that the opinions set forth in Finnell's Expert Reports, Deposition, Declaration, and Joint Declaration are both relevant and reliable, AES's *Daubert* Motion to Exclude the Testimony of Dr. Richard H. Finnell is **DENIED.**

**IT IS SO ORDERED.**

/s/Jan R. Jurden
Jan R. Jurden, President Judge

---

[29] Finnell Expert Report 4.B at 43–44; Finnell Expert Report 4.C at 29–30; Finnell Expert Report 4.D at 35.